# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **REBECCA BOYCE, ET AL.** | **CIVIL ACTION NO. 5:18-CV-00157** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CUSA, LLC, ET AL.** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

Pending before the Court is a Motion for Summary Judgment filed by Defendant Allied World Surplus Lines Insurance Company ("Allied") [Doc. No. 43]. Plaintiffs Rebecca Boyce and Bao Ho ("Plaintiffs"), individually and on behalf of their minor children, filed an opposition [Doc. No. 41] and a supplemental opposition [Doc. No. 54]. Allied has filed a reply [Doc. No. 57]. The matter is fully briefed and the Court is prepared to rule.

## I. FACTS AND PROCEDURAL BACKGROUND

This case arises from a slip and fall accident. Plaintiffs contend that Rebecca Boyce suffered injuries to her left big toe, right wrist, and left hip on June 16, 2017, when she tripped and fell on a piece of rebar protruding from the cement deck area of a swimming pool at a Baymont Inn and Suites Hotel ("the Hotel") located in Shreveport, Louisiana.

On December 18, 2017, Plaintiffs filed suit in the First Judicial District Court for the Parish of Caddo, State of Louisiana. The lawsuit was removed to this Court on February 7, 2018.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Coverage Under the Allied Policy Issued October 2017

The Petition names CUSA, LLC ("CUSA"), doing business as Baymont Inn Suites; Citizens Bank; Liberty Surplus Insurance Corporation ("Liberty Surplus"); and Allied, as Defendants. Plaintiffs allege that CUSA failed to properly maintain the Hotel, failed to remedy or warn of a dangerous condition, and failed to inspect the premises, causing and contributing to Rebecca Boyce's bodily injuries. Allied is named as a Defendant pursuant to the Louisiana Direct Action Statute, La Rev. Stat. 22:1269 et al, on the basis that it issued a policy of insurance providing coverage to CUSA for damages caused by the slip-and-fall at CUSA's property.

In its motion for summary judgment, Allied asserts that its policies are "Claims-Made-And-Reported" policies (as opposed to "Occurrence" Policies), requiring that claims be *both* made to the Insured (here, CUSA) *and* reported to the Insurer (Allied) within the Policy period. There

2

is no factual dispute that CUSA received notice of Plaintiffs' claims in June and July 2017. Allied contends that the claims were first reported to it in February 2018.

Allied asserts that the policy in effect when suit was filed was issued on October 1, 2017, to CUSA, over three months *after* plaintiff's slip-and-fall claims were first made to CUSA. A prior policy was in effect from October 1, 2016, to October 1, 2017, and thus expired months *before* the claim was first reported to Allied in February 2018. Since the claim was not *both* made to CUSA (the Insured) *and* reported to Allied (the Insurer) during the term of either policy, Allied contends that it is entitled to summary judgment dismissing the claims against it.

Plaintiffs oppose the motion for summary judgment on the basis that the policy in effect when suit was filed provides coverage for "bodily injury" and wrongful acts prior to that policy's inception in October 2017 regardless of whether the Insured (CUSA) had notice of the potential claim prior to October 2017.

Additionally, Plaintiffs contend that the Allied policy was, in fact, a renewal, and the Retroactive Date of May 23, 2007 makes the actual Inception Date to be May 23, 2007, rather than October 1, 2017. [Doc. No. 43-3, p. 28-29]

Finally, Plaintiffs assert the prior policy provides coverage because the accident occurred during that policy's period and Allied *was* notified of this Claim on August 11, 2017, within the prior policy's period, when emails were sent by Plaintiffs directly to Allied [Doc. No. 54-4, Affidavit of Rebecca Boyce with attached emails dated 8/11/17 to Allied]. Plaintiffs argue that the policy states simply that the claims must be reported to the "Insurer"; it does not say by whom. Should Allied argue that the policy requires that notice to Allied must be given by the "Insured," then the policy language is ambiguous and precludes summary judgment, according to Plaintiffs.

Louisiana's Direct Action Statute "grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Hood v. Cotter*, 2008–0215 (La.12/2/08), 5 So.3d 819, 829 citing LA. REV. STAT. 22:655(D).

The Declarations page of the policy which became effective October 1, 2017, provides:

> THIS IS A CLAIMS-MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE.

[Doc. No. 43-3, p. 1, 19].

Allied contends that, in step with the policy being a "Claims-Made-And-Reported" policy, the policy's Insuring Agreement expressly provides that it will pay certain amounts on behalf of the Insured "from any Claim first made against the Insured and reported to the Insurer during the Policy Period or any applicable Extended Reporting period" for professional services wrongful acts and/or employment practices wrongful acts "committed on or after the applicable Retroactive Date and before the end of the Policy Period." [Doc. No. 43-3, p. 19].

Allied interprets this to mean that in order to establish coverage, Plaintiffs must show their claims were first made to CUSA *and* reported to Allied *either* before October 1, 2017, when the prior policy expired, *or* between October 1, 2017 through October 1, 2018, the subsequent policy's policy period.

Plaintiffs disagree. They contend that Endorsement No. 6 deleted the requirement that prior acts be unknown and unreported by deleting that requirement throughout the policy.

The policy defined "Claims-Free-Account" as follows:

> III. (D). Claim-Free-Account means the Named Insured if, at the time such entity first applied for professional liability coverage with the Insurer, the Named Insured, its Subsidiaries, and its insureds were not aware of a

4

Wrongful Act which a reasonable person who is an Insured would believe could give rise to a Claim for a Professional Services Wrongful Act."

[Doc. No. 43-3, p. 22].

However, Endorsement No. 6 states:

The definition of a "Claims-Free-Account' in Section III. Definitions, subsection (D), is *deleted* in its entirety and any reference therein in the Policy form."

[Doc. No. 43-3, p. 13] (emphasis added).

Plaintiffs contend this term was purposely deleted in its entirety throughout the policy to provide coverage for prior Wrongful Acts even if known and reported to the Insured. This was because the Insured, CUSA, LLC, would not have been a "Claims-Free-Account" since it was aware of a Wrongful Act that a reasonable person would believe could give rise to a claim.

Plaintiffs further contend this deletion had the effect of amending the Insuring Agreement to provide coverage for prior Wrongful Acts even if known and reported to the Insurer. Plaintiffs conclude that, at a minimum, the deletion of any reference throughout the policy of the requirement that the Insured be a "Claims-Free-Account" conflicts with the alleged policy provision upon which Allied relies, making the policy language ambiguous, and, any such conflicts are to be construed in favor of the Insured to provide coverage.

Allied responds that the deletion of the "Claims-Free-Account" condition through Endorsement No. 6 has no bearing on, and cannot be read to modify, the distinct and unambiguous "Claims-Made-and-Reported" provisions. Citing case-law from other jurisdictions, Allied argues

> "[i]nsurance contract law dictates that when an endorsement deletes language from a policy, a court must not consider the deleted language in its interpretation of the remaining agreement. *Caudill Seed & Warehouse Co. v. Houston Cas. Co*., 835 F. Supp. 2d 329, 337 (W.D. Ky. 2011) (quoting *Valassis Commc'ns, Inc. v. Aetna Cas. & Sur. Co*., 97 F.3d 870, 873 (6th Cir. 1996)). This is because 'deleted words

are not part of the agreement,' and deleted language therefore 'cannot be relied on to create an ambiguity.' *RTC Mortg. Tr. 1995-S/NI v. J.I. Sopher & Co*. No. 96 CIV. 4992 (DC), 1998 WL 132815, at *3 (S.D.N.Y. Mar. 24, 1998)." [Doc. No. 57, p. 8-9].

However, none of those cases were decided under Louisiana law.

In diversity cases such as this, federal courts must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Ashland Chem. Inc. v. Barco Inc.,* 123 F.3d 261, 265 (5th Cir.1997). In Louisiana actions involving the interpretation of insurance policies issued in Louisiana for property located in Louisiana, Louisiana's substantive law controls. *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co*., 352 F.3d 254, 260 (5th Cir. 2003).

The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the insured and insurer as reflected by the words in the policy. LA. CIV. CODE ART. 2045; *Ledbetter v. Concord Gen. Corp*., 665 So.2d 1166, 1169 (La. 1/6/96). When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent. LA. CIV. CODE ART. 2046; *Central La. Elec. Co. v. Westinghouse Elec. Corp*., 579 So.2d 981, 985 (La.1991).

Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. LA. CIV. CODE ART. 2047; *Schroeder v. Board of Supervisors of La. State Univ*., 591 So.2d 342, 345 (La.1991). Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 630 So.2d 759, 764 (La.1/14/94).

An insurance contract is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions. LA. CIV. CODE ART. 2050; *Central La. Elec. Co*., 579 So.2d at 985. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. *Valentine v. Bonneville Ins. Co*., 691 So.2d 665 (La.3/17/97); *Reynolds v. Select Properties, Ltd.,* 634 So.2d 1180, 1183 (La.4/11/94). That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Ledbetter*, 665 So.2d at 1169; *Reynolds*, 634 So.2d at 1183.

If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who furnished the policy's text and in favor of the insured finding coverage. LA. CIV. CODE ART. 2056; *Crabtree v. State Farm Ins. Co.,* 632 So.2d 736, 741 (La. 2/23/94).

Allied has not articulated a purpose for the deletion of the definition of "Claims-Free-Account" from the policy, if not to provide coverage for prior Wrongful Acts, even if known and reported to the Insured, as Plaintiffs argue. Nor can the Court discern any other purpose.

At the very least, the policy is ambiguous. Thus, since ambiguities are to be construed against the insurer who furnished the policy's text and in favor of the insured finding coverage,

summary judgment in favor of Allied is not appropriate.[1]

**III. CONCLUSION**

For the foregoing reasons, Allied's Motion for Summary Judgment [Doc. No. 43] is DENIED.

MONROE, LOUISIANA, this 1st day of March, 2019.

                                          **TERRY A. DOUGHTY**
                                          **UNITED STATES DISTRICT JUDGE**

---

[1] Having determined that Allied is not entitled to summary judgment on this basis, the Court does not consider Plaintiffs' other arguments against summary judgment.